# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 12-673V
### (To be Published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | Special Master Corcoran |
| KATHLEEN J. AUCH, | * | |
| | * | Filed:  May 20, 2016 |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Decision; Interim Fees and Costs; |
| SECRETARY OF HEALTH AND | * | Reasonable Basis; Expert Costs. |
| HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for Petitioner.

*Alexis B. Babcock*, U.S. Department of Justice, Washington, DC, for Respondent.

## INTERIM ATTORNEY'S FEES AND COSTS DECISION[1]

On October 4, 2012, Kathleen Auch filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] After the filing of numerous medical records, along with reports from two experts, the case is scheduled for hearing in August 2016.

Petitioner has requested an interim award of attorney's fees and costs in the amount of $67,225.73. Respondent objects that an interim fees award is not warranted at this juncture because Petitioner has not made the requisite special showing, and otherwise objects to the

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

reasonableness of the requested rates or time billed to the matter. As discussed below, I hereby **GRANT IN PART** Petitioner's Motion, awarding at this time interim fees and costs of **$46,082.92**, deferring ruling on expert costs, and denying the remainder of Petitioner's fees request.

## Factual and Procedural History

Ms. Auch was 50 years old when she received the influenza ("flu") vaccine on October 6, 2009. Petition at 1, filed Dec. 5, 2013 (ECF No. 1) ("Pet."). Twenty minutes later, she claims to have experienced paresthesia, weakness, dizziness, shortness of breath, and chills. Pet. at 1. Her symptoms continued, resulting in her being hospitalized October 14- 19, 2009, due to significant fatigue, headache, flushing, tingling, nausea, loss of muscle control, lower extremity weakness, and shortness of breath. *Id.* at 2; *see also* Pet'r's Ex. 2-2 at 37-40; Pet'r's Ex. 2-1 at 9. Since that time, Petitioner has continued to be seen by doctors for treatment of a variety of symptoms (and some of those medical providers have connected her symptoms to her receipt of the flu vaccination), but without agreement on a diagnosis. Petitioner filed this action on October 4, 2012, alleging that such injuries were caused the flu vaccine. Pet. at 2.

Petitioner's request for interim fees includes attorney invoices, and those records (which begin in September 2012) illuminate counsel's conduct throughout the relevant period. Prior to the filing of the petition, Petitioner's counsel, Richard Gage, devoted approximately two hours to the case on September 2 and 28, 2012. ECF No. 66 at 8. During this time, Mr. Gage met with paralegals at his firm to review the file (including medical records pertaining to the onset of Petitioner's alleged injury), as well as to draft and finalize initial filings. *Id.*

The petition was filed about a month after counsel obtained the case (and given the factual allegations, it appears that the petition needed to be filed promptly, to avoid a possible statute of limitations problem). Thereafter, Ms. Auch began the process of gathering and filing relevant medical records, completing the process by June 24, 2013 (ECF No. 28), after requesting numerous extensions of time to do so (*see, e.g.,* ECF Nos. 7, 9, 14, 16, and 18). During the period of time when medical records were being gathered, Mr. Gage spent a significant amount of time reviewing the case file and conferring with paralegals, as well as another attorney, Harley Karz-Wagman, regarding the case. ECF No. 72 at 9-10. Mr. Gage also communicated with Respondent's counsel and reviewed documents that she filed. *Id.* Mr. Karz-Wagman (who initially became involved with this case in November 2012) communicated directly with Petitioner but spent most of his time reviewing the records and preparing an outline of those records. *Id.* at 19.[3]

---

[3] Mr. Karz-Wagman appears to have been involved in this case only from November 19, 2012, to March 6, 2013. ECF No. 72 at 19.

Thereafter, on August 16, 2013, Respondent filed a status report proposing a deadline of September 30, 2013, to file her Rule 4(c) report (ECF No. 29) which the special master to whom this case was initially assigned subsequently ordered (ECF No. 30). Respondent met this deadline, and in her report opposed an entitlement award in this case. ECF No. 31. She also identified additional outstanding medical records in her report (ECF Nos. 31 and 38), which were subsequently filed by Petitioner (ECF Nos. 39 and 40).[4] After Respondent filed her Rule 4(c) report, Mr. Gage continued to devote a significant amount of time to reviewing the file and meeting with paralegals regarding this case (including time that he spent working with the paralegals on affidavits and witness statements). ECF No. 72 at 10-11. The case was transferred to me on April 7, 2014. ECF No. 46.

There was a significant delay from the filing of the Rule 4(c) report in September 2013 to the time Petitioner filed an initial expert report in this case – an opinion letter from one of her treating physicians, Robert J. Neumayr, MD, PhD – on June 4, 2014, proposing that her ongoing symptoms were caused by a reaction to the flu vaccine. *See* Report, dated June 4, 2014 (ECF Nos. 52-2 and 52-3). Petitioner's counsel spent time communicating about the case with at least one other expert from whom he did not ultimately file a report, Marcel Kinsbourne, MD.[5] ECF No. 12-13. Mr. Gage also spent a significant amount of time discussing the case with paralegals, as well as reviewing the medical records and conducting legal research during this period of time. ECF No. 72 at 12-13.

However, Petitioner acknowledged in a status report that she submitted along with Dr. Neumayr's opinion letter that it did not cover all relevant issues. ECF No. 52-1. Accordingly, I set a deadline of August 29, 2014, for Petitioner to file a supplemental expert report. ECF No. 53. Mr. Gage thereafter spent additional time conferencing with paralegals and reviewing the files in this case, as well as discussing the case with Dr. Neumayr. ECF No. 72 at 13-14. Mr. Gage also conducted research regarding causation in this case. *Id.* at 14. Petitioner finally filed a supplemental expert report on October 20, 2014 (ECF No. 57), after requiring additional extensions of time (*see, e.g.*, ECF Nos. 54 and 55).

I next set January 30, 2015, as the deadline for Respondent to file her expert report. ECF Nos. 58 and 59. After Respondent met that deadline, I issued an order on February 23, 2015, instructing Petitioner to file a status report indicating what, if any, response (such as an additional or supplemental expert report) she wished to make and a timeline for so doing. Non-

---

[4] After requesting (and being granted) an extension of time to do so (ECF Nos. 34 and 35), Petitioner also filed an affidavit of damage and witness affidavits on November 13, 2013 (ECF No. 37).

[5] The billing records reveal that Petitioner's counsel had a phone conversation with Marcel Kinsbourne, MD regarding this case months prior, on January 6 and 31, 2014. ECF No. 72 at 11-12. Mr. Gage spoke to Dr. Kinsbourne again on February 14, 2014. *Id.* at 12.

PFD Order, dated Feb. 23, 2015. In the intervening time period, Mr. Gage continued to conference with paralegals and review the file in this case. ECF No. 72 at 15. He also spent time conferring with a medical expert (and he again spoke with Dr. Kinsbourne on various occasions). *Id*. On March 31, 2015, Petitioner filed a status report expressing her intent to file a response to Respondent's expert report and requesting until May 15, 2015, to do so. ECF No. 60. Thereafter, billing records reflect Mr. Gage's first contact with Lawrence Steinman, MD on April 15, 2015, with whom he continued to correspond on numerous occasions in the upcoming months. ECF No. 72 at 16. During this time, Mr. Gage also devoted additional time to meeting with paralegals regarding this case. *Id*. After requiring additional extensions of time to do so, Petitioner filed Dr. Steinman's expert report on July 8, 2015. ECF No. 65.

On August 4, 2015, I issued an order setting a deadline for Respondent to file a supplemental (or additional) expert report responding to the issues raised by Petitioner's expert report. Non-PDF Order, dated Aug. 4, 2015. Respondent did so on September 14, 2015. ECF No. 69 (Resp't's Ex's G-K). At that time, I also requested that the parties propose dates that they (as well as their respective experts) were available for a two-day hearing in this matter. Non-PDF Order, dated Aug. 4, 2015. After conferring with the parties, I scheduled an entitlement hearing in this matter to be held at a federal courthouse in Omaha, Nebraska on August 24-25, 2016. ECF No. 70. Following the submission of Respondent's expert report, Mr. Gage again spent additional time conferring with paralegals and reviewing files. ECF No. 72 at 17.

**Fees Request**

Not long after the filing of Dr. Steinman's report, Petitioner made a request for an interim award of attorney's fees and costs in the total amount of $49,578.68 on July 31, 2015. ECF No. 66 ("First Fees Mot."). In it, Petitioner requested compensation for her primary counsel, Mr. Gage, in the total sum of $20,920.50, for work performed from 2012 to the present, based on rates ranging from $265.00 per hour to $274.00 per hour depending upon the year in question. First Fees Mot. at 14. Petitioner specifically asked for compensation for the 2.7 hours that Mr. Gage spent working on the interim fees petition in this case between June 29, 2015, and July 31, 2015, when it was filed. ECF No. 66 at 14. In addition, Ms. Auch sought compensation for the services of Mr. Karz-Wagman, based on an hourly rate of $265.00 per hour for 10.8 hours of work performed in 2012, and $270.00 per hour for 19.3 hours of work performed in 2013 (representing a total of $8,073.00). *Id*. at 16. And Petitioner asked for compensation for paralegal time, calculated at a variety of rates. *Id*. at 18-32.[6]

---

[6] Throughout the litigation process, various paralegals have assisted the attorneys' efforts in moving this case forward. Specifically, Petitioner requested reimbursement for paralegal costs for work performed by Susan McNair at a rate of $110.00 per hour for the 26.9 hours of work she performed on this case in 2013, and $112.00 per hour for the 26 hours of work she performed from 2014 to present (representing a total of $5,815.00). First Fees Mot. at 18-24. Petitioner also requested reimbursement of paralegal costs for work performed by Brian Vance at a rate of $112.00 per hour for the 5 hours of work he performed on this case from 2014 to present (representing a total cost of

Petitioner's motion further requested an award of $9,053.18 in costs. First Fees Mot. at 33. This amount included expert-associated costs – 15 hours of work performed by Dr. Steinman on this case at a rate of $500.00 per hour, as well as an expert "prep / consult" fee (apparently for Dr. Neumayr) in the amount of $1,050.00.[7] *Id.* at 33, 41. She also asked for filing fees ($350.00) and miscellaneous expenses related to copying and mailing items. *Id.* at 33. Appended to Ms. Auch's Motion are several attachments, including billing records and receipts establishing litigation costs (such as checks made out to facilities for copies of the medical records, or invoices reflecting amounts paid to Petitioner's experts).

On August 17, 2015, Respondent opposed the fees request. ECF No. 67 ("First Opp."). Respondent argued that Petitioner had failed to make the special showing required to justify an award of interim fees and costs under the circumstances of this case (although she did not question whether the case was filed in good faith, or its reasonable basis).[8] First Opp. at 5. The proceedings had not been protracted, Respondent maintained, and there was no evidence of other litigation-related difficulties that justified an interim award. *Id.* at 5-6. Rather, the case's length was attributable to the numerous extensions of time requested by Petitioner's counsel. *Id.* at 6. Finally, Respondent argued that denial of interim fees in this case would not constitute an undue hardship for Petitioner, as the fees application did not establish that Ms. Auch herself was bearing any of the incurred costs. *Id.*

---

$560.00). *Id.* at 25. Petitioner requested reimbursement of paralegal costs for Helen Nelson at a rate of $108.00 per hour for 9.6 hours of work she performed in 2012, $110.00 per hour for 6.7 hours of work she performed in 2013, and $112.00 per hour for 1.5 hours of work she performed in 2014 (representing a total cost of $1,941.80). *Id.* at 26-28. Petitioner requested reimbursement of paralegal costs for Pauline Stevens at a rate of $108.00 per hour for the 6.3 hours that she spent working on this case in 2012 (representing a total cost of $680.40). *Id.* at 29. Petitioner also requested reimbursement of paralegal costs for Kara Sutton at a rate of $110.00 per hours for 15.5 hours of work she performed in 2013 (representing a total cost of $1,705.00). *Id.* at 30-31. Petitioner further requested reimbursement of paralegal costs for Fred Hulbert at a rate of $112.00 per hour for 0.7 hours of work he performed in 2014 (representing a total cost of $78.40). *Id.* at 32. Comparison of the initial fees request to the subsequent request reveals that Petitioner also requested reimbursement of paralegal cost for Debora Cordova at that time, which appear to represent 0.7 hours of time billed to this case compensated at a rate of $110.00 per hour (representing a total cost of $77.00).

[7] The check for $1,050.00, which was filed along with the fees request, was made out to Yankton Medical Center PC (1104 West 8th Street, Yankton, SD 5707078-0706) (Dr. Neumayr's place of employment). ECF No. 66 at 39.

[8] The awarding of interim fees must be based on the more general factors that special masters consider in their discretion to award reasonable fees and costs to unsuccessful petitioners (given that an interim request, being made in a case that has yet to be adjudicated, is literally made in the context of an "unsuccessful" petition). Thus, a special master asked to make an interim award must consider if (a) the petition was brought in good faith; and (b) there was a reasonable basis for the claim for which the petition was brought. Section 15(e)(1); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011) (applying good faith/reasonable basis test to interim fee request). Although Respondent has not challenged either good faith or reasonable basis, I have independently seen nothing that would suggest either factor weighs against an interim fees and costs award.

Respondent also made several specific objections to the components of the fees and costs award requested – although she did not question the requested hourly rates for attorney or paralegal time. First Opp. at 2. Among other things, Respondent contested the amount of paralegal time devoted to the matter. *Id.* at 7-8. Respondent also questioned the reasonableness of the expert related costs – specifically, the $500.00 per hour requested by Petitioner for work performed by Dr. Steinman, which she argued was somewhat high (given that experts more commonly received no more than $300 to $400 an hour), and therefore the interim nature of the request justified a lower hourly rate until Dr. Steinman testified. *Id.* at 9. Petitioner did not reply in further support of her initial fees request.

### Revised Fees Request

Before I had ruled on the initial interim fees request,[9] Petitioner renewed her prior request for interim fees with an additional filing on November 19, 2015, increasing the sum requested to $67,225.73. ECF No. 72 ("Second Fees App."). Ms. Auch now asked that Mr. Gage be compensated at an increased hourly rate of $415.00 per hour for the 82 hours of work he performed on this case from 2012 through the present (representing a total of $34,030.00). Second Fees App. at 9-17. This included an additional 5.2 hours of work that Mr. Gage had performed since the initial interim fees petition was filed, reflecting a variety of additional work (including approximately 3.5 hours spent working on the revised fees request). *Id.* at 17.

Petitioner also revised or added compensation requests for the other attorneys who worked on this case. She now requested a rate for Mr. Karz-Wagman of $270.00 per hour for the 30.1 hours of work he performed between 2012 and 2013 (representing a total of $8,127.00). Second Fees App. at 19. Additionally, she asked that attorney Dustin Lujan be paid at the rate of $200.00 per hour for the 7.5 hours that he worked on this case in 2015, after the filing of the initial interim fees request (representing a total of $1,500.00).[10] *Id.* at 21. Petitioner also increased her request for reimbursement of paralegal costs for the seven paralegals who worked on this case to a rate of $135.00 per hour for 102.4 hours of work performed between 2012 and the present (representing a total cost of $13,824.00). *Id.* at 23-37. This included an additional 3.9 hours of work that has been performed on this case by two paralegals since the initial fees petition was filed.[11] *Id.* Petitioner's expert-related costs did not change. *Id.* at 40, 48. But

---

[9] I ordered the parties to attempt to settle the interim fee request (Non-PDF Order, dated Oct. 1, 2015), but they were unsuccessful (ECF No. 71).

[10] Billing records submitted with the Second Fees Application establish that Mr. Lujan worked on this case during two days in September 2015, reviewing the previously-filed expert reports and working on the amended fee request. Second Fee App. at 21.

[11] The 17.8 hours that Helen Nelson billed to this case were recalculated at a rate of $135.00 per hour (now representing a total cost of $2,403.00); the 6.3 hours that Pauline Stevens billed to this case were recalculated (now representing a total cost of $850.50); the 15.5 hours that Kara Sutton billed to this case were recalculated (now

Petitioner added new requests for reimbursement of additional copying costs ($722.55), filing fees ($350.00), and miscellaneous mailing costs. *Id.* at 39, 40.[12]

Petitioner explained that her decision to request a higher hourly rate for attorney and paralegal time was inspired by *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), issued by Special Master Gowen. Pet'r's Mem. in Support of Fees & Resp. to Resp't's Objections to Award of Interim Attorney's Fees & Reimbursement of Costs (ECF No. 72-1) at 1-2. In *McCulloch*, Special Master Gowen set in-forum hourly rates for a number of lawyers from the law firm of Conway Homer & Chin-Caplan PC (the "Homer Firm"). Because Petitioner's counsel was an experienced Vaccine Program attorney, Ms. Auch maintained that she was entitled to seek compensation for him calculated at the same rate scale. *Id.* at 2. To the extent Mr. Gage's rate was facially lower than the top Homer Firm rate, she continued, the difference was not significant enough to apply the "forum rate" exception rule set forth by the Federal Circuit in *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Pet'r's Mem. in Support of Fees & Response to Resp't's Objections to Award of Interim Attorney's Fees & Reimbursement of Costs (ECF No. 72-1) at 3.

Petitioner's second fees request also addressed arguments that were previously advanced by Respondent in her first opposition (but never countered by Petitioner in a reply). Thus, she asserted that the case was in fact protracted. Second Fees App. at 3-6. Petitioner also attacked as unfounded Respondent's claims that certain billing entries were unspecific, maintaining that disclosure of details about work performed on the case at this interim stage would be a breach of attorney-client confidentiality. *Id.* Petitioner further defended the attorney hours spent in the case's initial evaluation as justified given the facts and nature of the injury, as well as the time spent on the matter overall by Mr. Gage (including time he billed to direct paralegal activities). *Id.* at 5. And she defended Dr. Steinman's requested rate as reflecting what other special masters had paid him in the past. *Id.* at 6-7 (citing *Guerrero v. Sec'y of Health & Human Sevs.*, No. 12-689V, 2014 WL 5335301, at *9 (Fed. Cl. Spec. Mstr. Sept. 23, 2014), *vacated and remanded*, 120 Fed. Cl. 474 (2015) (awarding Dr. Steinman an hourly rate of $500.00 per hour in a Vaccine Program case)).

---

representing a total cost of $2,092.50); the 0.8 hours that Fred Hulbert billed were recalculated (now representing a total cost of $94.50); and the 0.7 hours that Debora Cordova spent working on this case were recalculated (now representing a total cost of $94.50).

Some paralegals devoted additional time to this case after the filing of the initial fees petition. This included an additional 0.7 hours billed by Susan McNair (and when calculated at a rate of $135.00 per hour for the 53.1 total hours that she billed to this case, representing a total cost of $7,168.50; an additional 3.2 hours billed by Brian Vance (and when calculated at a rate of $135.00 per hour for the 8.2 total hours that he billed to this case, representing a total cost of $1,107.00).

[12] In her original fees application, Petitioner requested $674.40 in copying costs.

On December 3, 2015, Respondent filed a brief opposing the renewed and revised fee application. ECF No. 73 ("Second Opp."). Respondent mostly incorporated by reference her prior arguments about the propriety of an interim fee award, or the excessive nature of the $500.00 hourly rate requested for Dr. Steinman.[13] Second Opp. at 2. Respondent represented that she had no objection to the hourly rates initially sought for Mr. Gage in the First Fees Application, but challenged the revised higher rate of $415.00 per hour for all work done between 2012 and 2015, arguing that because Mr. Gage practiced law in Wyoming, he was not (under controlling precedent) entitled to the higher "forum rate" applied in *McCulloch* to Homer Firm attorneys practicing in Boston, Massachusetts. *Id.* (citing *Masias v. Sec'y of Health & Human Sevs.*, 634 F.3d 1283 (Fed. Cir. 2011)).[14] Respondent also objected to the rate sought for Mr. Lujan as unsubstantiated given his apparent lack of expertise,[15] and characterized 4.5 hours of his time as duplicative of work performed by Mr. Gage and the paralegals. *Id.* at 3.

On December 30, 2015, Petitioner filed a reply. ECF No. 74 ("Reply"). In it, she argued that *Masias* was not controlling (or even relevant in providing guidance) in this case. Reply at 2-3. Petitioner again reiterated her belief that Mr. Gage's time should be compensated at the "forum rate" as reflected in *McCulloch* because what he billed locally was not sufficiently different from the forum rate. *Id.* at 3. Accordingly, Petitioner requested reimbursement of attorney's fees and costs in the amount of $67,225.73. Second Fee App. at 1.[16] The matter is now ripe for resolution.

## ANALYSIS

I must first determine if an interim award is appropriate. Once that bridge has been crossed, I must apply the usual standards to fees and costs awards in the Vaccine Program, in order to arrive at a "reasonable" sum (if any) to be awarded.

---

[13] Respondent otherwise noted that she had no objection to the fact that in the Second Fees Application, Petitioner was now seeking "an additional 4.9 hours of work for attorney Richard Gage, 0.7 hours of work for paralegal Susan McNair, and 2.2 hours of work for paralegal Brian Vance," other than to raise the same objection as before to negligible amounts of time billed by Mr. Gage to paralegal administrative direction. Second Opp. at 1. A review of the billing records reveals that Brian Vance actually billed an additional 3.2 hours during this period of time (rather than an additional 2.2 hours as Respondent suggests).

[14] Respondent similarly objected to Petitioner's attempt to obtain a higher paralegal rate in this case based on *McCulloch.* Second Opp. at 2.

[15] Respondent noted that a "search for Mr. Lujan on the Wyoming State Bar website indicates that he became a member of the Bar in September 2015," and "[n]o other information was listed." Second Opp. (ECF No. 73) at 3.

[16] In her Reply, Petitioner requested reimbursement of attorney's fees and costs in the amount of $66,499.23 (ECF No. 74 at 3) – less than the $67,225.73 asked for in the revised fee request, and without any explanation for the variance. Second App. at 1. I have determined that this change in the amount requested is likely due to a clerical error (and will therefore rely on the sum requested in her second fees application).

## I.     Propriety of Interim Award Generally in This Case.

As I have discussed in other decisions, the Federal Circuit[17] has ruled that awarding interim fees and costs in Vaccine Program cases is consistent with the underlying remedial purposes of the Vaccine Act. *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012), *aff'd, Sebelius v. Cloer,* 133 S.Ct. 1886 (2013); *Avera*, 515 F.3d at 1352; *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (awarding interim fees prior to an entitlement decision). But the circumstances in which an interim award might appropriately be issued "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014) (citing *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010)).

Thus, although the Federal Circuit has identified certain conditions under which an interim fees award may be appropriate, such as "where proceedings are protracted and costly experts must be retained," (*Avera* at 1352), *Avera* has been interpreted as allowing special masters broad discretion in determining whether to award interim fees. *See, e.g.*, *Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (*Avera* provides only "*examples* and *general guidance* concerning when interim fees and costs might be awarded, leaving the special masters broad **discretion** to consider many factors in considering whether an interim award is appropriate in a particular case") (emphasis in original).[18]

---

[17] In this decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). Federal Circuit decisions, however, are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

[18] In some instances, interim awards have been granted in light of the amount of time that has passed in the case, as well as the demands of the relevant case. *See, e.g.*, *MacNeir v. Sec'y of Health & Human Servs.*, No. 03-1914V, 2010 WL 891145, at *1-4 (Fed. Cl. Spec. Mstr. Feb. 12, 2010) (granting an interim award of fees and costs of $12,062.00 primarily arising from counsel's efforts to obtain and file medical records); *Franklin v. Sec'y of Health & Human Servs.*, No. 99-0855V, 2009 WL 2524492, at *4 (Fed. Cl. Spec. Mstr. July 28, 2009) (awarding interim fees where the petition had been pending for years, petitioner's counsel had paid significant amounts to experts, and the final resolution of the case was likely to take some time). But there is no defined period of time that must have passed from the date of a petition's filing to justify an interim fees award. *See, e.g.*, *Bear*, 2013 WL 691963, at *4-5 (interim fees award allowed when petition had been pending for only nineteen months); *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (interim fees award granted with respect to case that went to hearing within one year but where decision was still pending).

Respondent maintains that Petitioner's interim fees application is inappropriate because she cannot make the particularized showing of hardship necessary for such an award, by establishing, for example, that the case has been "protracted" or involves inordinate expert costs. Resp't's Opp. to Pet'r's' App. for Interim Attorneys' Fees & Costs (ECF No. 67) at 5-6. A threshold matter to resolve is whether all three of these *Avera* factors must in fact be satisfied, or if the test balances the factors in order to determine the propriety of an interim award overall, in a special master's discretion. As I have previously held, the answer to that question is no. *See, e.g., Al-Uffi*, at *5-6. The better approach, and one in keeping with the overall goals of the Vaccine Program, is to apply the factors together and balance them out.

Based upon the above, I reach the following conclusions. First, Petitioner argues that this matter is protracted because it has been pending for several years without reimbursement of fees or costs. Second Fees App. at 3. In the majority of cases, the "protracted proceedings" element is satisfied where several years have passed, or where a case's trajectory is anticipated to take several more years prior to resolution. *See, e.g., Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 2284989, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2013) (granting interim fees when proceedings had been ongoing for over five years); *Wright v. Sec'y of Health & Human Servs.*, No. 10-222V, 2013 WL 1800373, at *3 (Fed. Cl. Spec. Mstr. Apr. 4, 2013) (finding that three years pre-entitlement hearing justified interim fees). However, there are cases where interim attorney's fees and costs have been awarded even though the matter was less than a year old. *Becker v. Sec'y of Health & Human Servs.*, No. 13-687V, 2014 WL 4923160 (Fed. Cl. Spec. Mstr. Sept. 11, 2014).

Here, I do not find the case is notably protracted. Indeed, delay in this matter is somewhat attributable to Petitioner's repeated requests for extensions of time. For example, an initial statement of completion was not filed until May 13, 2013 (ECF No. 23) – seven months from the date of the petition's filing – although the fact that the case itself was only received by counsel a month or so before the limitations period would have run has some bearing on that delay. Petitioner also requested an extension of time to file the affidavits in this case. Similarly, Petitioner was initially ordered to file an expert report on causation on or before February 21, 2014, but did not do so until July 8, 2015 (and after having requested numerous extensions of time). Nevertheless, the matter is now set for hearing, and I find that overall (and given that the sum requested is not notably exorbitant for a three-year-old case) the case has lasted long enough to satisfy, if barely, this criterion.

Second, in an effort to establish the costliness of expert testimony, Petitioner invokes the approximately $8,500.00 in costs that have been incurred already in paying Drs. Steinman and Neumayr. First Fee App. at 33 (Tab E); Second Fees App. at 3. The real question, however, is not whether expert costs have been incurred at all, but whether they are objectively "excessive." *Avila ex re. Avila v. Sec'y of Health & Human Servs.*, 90 Fed. Cl. 590, 598 (Dec. 22, 2009)

(citing *Avera*, 515 F.3d at 1352); *Fester v. Sec'y of Health and Human Servs.*, No. 10-243V, 2013 WL 5367670, at *15 (Fed. Cl. Spec. Mstr. Aug. 27, 2013) (determining that "[i]t makes considerable practical sense" to evaluate whether expert costs are high based on objective criteria).

I find that they are not, in the overall scheme of things. For instance, in *Bell v. Sec'y of Health & Human Servs.*, No. 13-709V, 2015 WL 10434882 (Fed. Cl. Nov. 10, 2015), I denied a request for approximately $14,000.00 in expert costs that had been incurred (and paid) in a case pending for just over two years that was (as here) scheduled for an entitlement hearing in the upcoming months. While there are instances in which petitioners have obtained an interim award of expert costs before an expert has testified at hearing,[19] it is not the case that all petitioners should receive such costs simply for the asking.

However, the fact that expert retainers have been paid out of counsel's own pocket (Second Fee App. (ECF No. 72) at 46-48) does bear slightly in favor of the present request, since it relates to hardship – the third *Avera* factor relevant to this analysis. *See, e.g.*, *Becker*, 2014 WL 4923160, at *4; *Calise v. Sec'y of Health & Human Servs.*, No. 08-865V, 2011 WL 2444810, at *2-3 (Fed. Cl. Spec. Mstr. June 13, 2011); *Kirk*, 2009 WL 775396, at *2 ("[t]he guidance offered by the Circuit in *Avera* was slim, but the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners *and their counsel*" in order to ensure the availability of a competent bar) (emphasis added). I similarly find that counsel's burdens in litigating a case can be a relevant factor in evaluating hardship, since considering such burdens is consistent with one of the underlying purposes of permitting interim fees in the first place.

In this regard, Petitioner argues that her counsel cannot continue to represent petitioners in Vaccine Program cases, while going unpaid for years at a time. Pet'r's Mem. in Support of Fees & Resp. to Resp't's Objection to Award of Interim Attorney's Fees & Reimbursement of Costs (ECF No. 72-1) at 3-4. The fact that counsel may have other currently pending Vaccine Program cases where litigation costs have been incurred and have not yet been reimbursed, although not directly comparable here, does illustrate the economic challenges that an active Vaccine Program practitioner faces in representing multiple Vaccine Program claimants. Mr. Gage's burdens may well be greater, given the number of cases in which he is appearing at present in the Vaccine Program.[20]

Overall, I find that the present state of the case justifies an interim award. The case is sufficiently old to be deemed protracted for purposes of making an interim award. Even though

---

[19] *See, e.g.*, *DiMatteo v. Sec'y of Health & Human Servs.*, No. 10–566V, 2014 WL 1509320 (Fed. Cl. Spec. Mstr. Mar. 27, 2014)

[20] As of April 28, 2016, Mr. Gage is listed as attorney of record in 36 Vaccine Program cases (including nine currently before me).

Petitioner's counsel has contributed in some part to delay, the case has otherwise been prosecuted in a diligent manner, and counsel should not be penalized simply because the matter is not five or more years old. There are no other generalized bases for denial of an interim fees award in this case.[21]

## II.   Challenges to the Amounts Requested for Petitioner's Attorneys

### A.   Proper Hourly Rates for Mr. Gage and Mr. Lujan

I must now determine the magnitude of the interim award. Whether a fee award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is so. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The Federal Circuit has endorsed use of the lodestar approach when determining what constitutes reasonable attorney's fees under the Vaccine Act. *Avera*, 515 F.3d at 1347-48. Utilizing this approach, a special master first designates a reasonable hourly rate for the attorney in question, and then multiplies it by the number of hours that the attorney reasonably expended on the litigation. *Id*. at 1347-48. After making this initial calculation, a special master may make an "upward or downward departure" based on other factors. *Id*. at 1348. However, there is a presumption that following this procedure results in a reasonable fees award, which may "only be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v.*

---

[21] In opposing the present application, Respondent also cites to instances where other special masters have denied interim fees applications. First Opp. at 5; *See, e.g.*, *Bigbee v. Sec'y of Health & Human Servs.*, 2012 WL 1238484 (Fed. Cl. Spec. Mstr. Mar. 23, 2012) (determining that an interim fees award was not appropriate at that juncture in the case after a hearing in which fact and expert testimony was taken); *Heinzelman v. Sec'y of Health & Human Servs.*, 2012 WL 1119389, at *5 (Fed. Cl. Spec. Mstr. Mar. 13, 2012) (denying a third award of interim fees and costs because petitioner did not establish the special circumstances needed for such an award: the court found that "facilitating counsel's work cannot be the only reason to award attorneys' fees on an interim basis because if this were true, then 'interim fees would be the norm.'"); *Stone v. Sec'y of Health & Human Servs.*, 2011 WL 7068955 (Fed. Cl. Spec. Mstr. Nov. 14, 2011) (denying a second interim application for fees and costs). I have also denied such requests. *See, e.g.*, *Lamare v. Sec'y of Health & Human Servs.*, No. 12-312V (Fed. Cl. Spec. Mstr. Feb. 27, 2015) (unpublished decision) (deferring ruling on an interim fees application due to not meeting the *Avera* criteria). In *Lamare*, I determined that an award of interim fees was not justified, mainly because Petitioner had contributed to delay in the case by repeatedly filing motions for continuances, and because the matter was not especially protracted. *Id*. The fact that other cases produced other results, however, does not establish binding precedent in this case. Here, I find that the overall circumstances justify some interim award.

*Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010) (internal quotations omitted). In requesting attorney's fees, the petitioner in a Vaccine Program case bears the burden of providing evidence to support the reasonableness of the attorney's hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 211 (2009); *Rupert v. Sec'y of Health & Human Servs.,* 52 Fed. Cl. 684, 686 (2002).

As the Supreme Court explained in *Blum v. Stetson,* the "reasonable hourly rate" is the "prevailing market rate" in the relevant forum, meaning the rate charged "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. 886, 895 n.11 (1984). The relevant forum in Vaccine Program cases is always the District of Columbia (regardless of the location of the hearing or the other portions of the case), and the reasonable hourly rate should generally be based on the forum rate. *Avera,* 515 F.3d at 1349. However, an exception to the forum rule (often referred to as the *Davis* exception) is applied in cases where the majority of the attorney's work is performed outside the forum, and where there is a "very significant difference" in compensation between the forum rate and the local rate. Under such circumstances, when the forum rate is higher, the reasonable hourly rate for the attorney's fees award should be calculated utilizing the lower local rate (in order to avoid providing the attorney with a windfall).[22] *See Avera,* 515 F.3d at 1349 (citing *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. E.P.A.,* 169 F.3d 755 (D.D.C. Feb. 26, 1999)); *Rodriguez v. Sec'y of Health & Human Servs.,* No. 06–559V, 2009 WL 2568468, at *10 (Fed. Cl. Spec. Mstr. Jul. 27, 2009) (discussing "bulk of the work" analysis used to determine if local rate should be applied), *mot. for review den'd,* 91 Fed. Cl. 453 (2010), *aff 'd,* 632 F.3d 1381 (Fed. Cir. 2011).

A special master may utilize evidence submitted by a petitioner, as well his own judgment and experience, when making determinations regarding the reasonable hourly rate for an attorney. *King v. Sec'y of Health & Human Servs.,* No. 03–584V, 2010 WL 5470787, at *4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010); *Broekelschen v. Sec'y of Health & Human Servs.,* No. 07–137V, 2008 WL 5456319, at *7 (Fed. Cl. Spec. Mstr. Dec. 17, 2008). The petitioner bears the burden of demonstrating the reasonableness of the hourly rate and the reasonableness of the number of hours expended on litigation. *Id.*

---

[22] Special masters have discretion in determining whether there is a "very significant" difference between the forum and local rates. *See, e.g., Hall v. Sec'y of Health & Human Servs.,* 640 F.3d 1351, 1354 (Fed. Cir. 2011) (finding a difference of 59 percent to be very significant); *Barrett v. Sec'y of Health & Human Servs.,* No. 09–389V, 2014 WL 2505689, at *16 (Fed. Cl. Spec. Mstr. May 13, 2014) (finding a difference of 38 percent to be very significant); *Sabella v. Sec'y of Health & Human Servs.,* No. 02-1627V, 2008 WL 4426040, at *5 (Fed. Cl. Spec. Mstr. Sept. 23, 2008) (finding a difference of 49 percent to be very significant).

Respondent disputes the propriety of the newly-requested attorney rates for two attorneys.[23] First, she challenges the $415.00 per hour rate requested in the second fees application for Mr. Gage, arguing that he cannot receive the *McCulloch* forum rate because he practices in Cheyenne, Wyoming, and thereby is subject to the *Davis* exception. Second Opp. at 2. In support, Respondent cites to the Federal Circuit's finding in *Masias*, 634 F.3d 1283, which involved another experienced attorney (Robert Moxley) who was at the time practicing with none other than Mr. Gage in the same location. *Id.* There, the Federal Circuit affirmed a special master's finding that the local rate of $220.00 per hour was significantly lower than the then-applicable forum rate of $350.00 per hour, and therefore the *Davis* exception should apply. *Masias*, 634 F.3d at 1286-87 (indicating that a 59% difference was very significant). In so doing, the Federal Circuit affirmed the special master's determination that Cheyenne was not an in-forum jurisdiction.

Other special masters have consistently adhered to the determination in *Masias* concerning the proper hourly rate for Mr. Gage given the locale of his practice. *See, e.g.*, *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1354 (Fed. Cir. 2011) (affirming a decision where a 46% to 60% difference in the rates paid Mr. Gage was deemed sufficiently significant for purposes of the *Davis* exception to qualify him as out-of-forum); *see also Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *3 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) ($260.00 per hour found reasonable for work that Mr. Gage performed in 2013); *Walters v. Sec'y of Health & Human Servs.*, No. 06-0379V, 2013 WL 4874319, at *3 (Fed. Cl. Spec. Mstr. Aug. 22, 2013) (same); *Lawrence v. Sec'y of Health & Human Servs.*, No. 09-0435V, 2013 WL 3146775, at *4 (Fed. Cl. Spec. Mstr. May 28, 2013) (Mr. Gage's rate of $260.00 per hour reasonable for work performed between 2012 through 2013).

Petitioner does not argue that *Masias* was wrongly decided. She also offers no evidence demonstrating that the difference between Cheyenne and in-forum rates observed in other cases no longer maintains. Instead, she argues that *Masias's* age diminishes its trustworthiness, as well as the fact that it involves a different lawyer, Mr. Moxley, who ceased practicing with Mr. Gage ten years ago. Pet'r's Mem. in Resp. to Resp't's Opp. to Forum Rates (ECF No. 74) at 2. Mr. Gage further argues that he is a significantly more experienced Vaccine Program practitioner (reflected in the fact that Mr. Gage was commanding a higher hourly rate than Mr. Moxley when *Masias* was decided).

As Petitioner notes, several recent special master decisions have reevaluated what the proper in-forum rate should be for lawyers of different experience levels. Last year, I determined in another matter that the proper forum rate range for attorneys with ten or more years of

---

[23] As noted above, Respondent does not challenge Mr. Karz-Wagman's requested hourly rate of $270.00 per hour. That rate is reasonable for an attorney with his level of experience, based on the rate ranges discussed herein.

experience (taking into account the Consumer Price Index ("CPI") inflation calculator) is $272.66 to $409.49 per hour. *See generally Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559, at *6 (Fed. Cl. Spec. Mstr. May 15, 2015), *mot. for review den'd*, 124 Fed. Cl. 225 (2015), *appeal dismissed* (C.A. Fed. 16-1467) (Feb. 9, 2016). This range is consistent with that arrived at by special masters in other cases. *See, e.g.*, *Tieu Binh Le v. Sec'y of Health & Human Servs.*, No. 07-895V, 2014 WL 4177331, at *13 (Fed. Cl. Spec. Mstr. July 31, 2014) (range for "experienced attorneys" is $275.00 to $413.00 per hour); *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *12 (Fed. Cl. Spec. Mstr. May 14, 2014) (applying range of $275.00 to $414.00 per hour for attorney with ten years of experience). The average based on that range is $341.08 per hour – higher than the local rate of $274.00 per hour originally requested by Petitioner for work performed on this case by Mr. Gage from 2014 to present.

Even more recently, in *Al-Uffi*, I found that a rate of $350.00 per hour was reasonable for Andrew Downing, an attorney with 20 years of litigation experience (including 12 years of Vaccine Program experience) who practiced in a jurisdiction that was in-forum for purposes of the analysis. In so finding, I embraced the reasoning of *McCulloch*, which effectively brought forward in-forum rates to the present (and in so doing increased them). *Al-Uffi* at 11, fn. 16.[24] But I did not propose to abrogate the Federal Circuit's embrace of the *Davis* exception. Accordingly, Mr. Gage's hourly rate should be considered to be subject to the forum rate only if he can show that there is not a "very significant difference" between the two.

Simply considering the rate originally requested (which I infer reflects Petitioner's initial, best estimation of what counsel was entitled to be paid before she or counsel learned of *McCulloch*), I find that the significant hourly rate difference that the Federal Circuit observed in *Masias* remains. There is a 41 percent difference between the local rate of $274.00 per hour originally requested by Mr. Gage and the revised requested rate of $415.00 per hour, based on *McCulloch*. There is no precise percentage differential mandated by case law that must be applied when determining if the difference is "very significant," but I find that as a general rule of thumb, any difference over 25 percent meets the standard. Petitioner has not otherwise offered evidence about local rates rebutting this determination.

I also find that awarding a non-forum rate herein is consistent in a broader sense with the Federal Circuit's embrace of the *Davis* exception. A practitioner living in a rural or sparsely-

---

[24] In *McCulloch*, Special Master Gowen extensively considered appropriate hourly rates for Vaccine Program attorneys, based on (i) the prevailing rate for comparable legal work within the forum of Washington, DC; (ii) the prevailing rate for cases in the Vaccine Program; (iii) the experience of the attorney both generally and within the Vaccine Program more specifically; (iv) the quality of his work; and (v) his reputation in the legal community and the community at large. *McCulloch*, ECF No. 148 at 23. Special Master Gowen ultimately concluded that "the range of $350 to $425 an hour for attorneys with more than 20 years of experience is a reasonable forum rate." *Id.* at 26. "Similarly . . . lawyers with 11 to 19 years of experience may reasonably charge $300 to $375 an hour, with higher rates to be paid to those with significant vaccine experience who perform quality work in these cases." *Id.*

populated region of the United States will inherently be unable to command the same hourly rates that a city practitioner would. At the same time, such a practitioner will also enjoy some benefits as well from reduced costs in doing business. Such matters factor into the concern that rural or remote practitioners not receive a windfall from the Vaccine Act's uniquely generous fees award provisions simply because they do not live in an urban setting or competitive legal market. For me to conclude otherwise, and to find that Mr. Gage practices in the equivalent of the Vaccine Program's Washington, DC, forum (especially where Petitioner has not offered evidence suggesting that Cheyenne has over time become comparable to an in-forum locale with respect to the practice of Vaccine Program law), would be to read the *Davis* exception out of existence entirely.

In addition, it is not evident that Mr. Gage performed the bulk of his tasks in this case anywhere outside of his home state or city. To the contrary, the billing records reveal that Mr. Gage performed all of the work in this case (which has yet to go to hearing) from his office in Wyoming – and that the same is true of all other individuals at his firm who worked on this case. He therefore performed his tasks out of forum – thus requiring that I apply the local rate, to the extent it is lower than the forum rate (as I have indeed found to be the case). *Rodriguez*, 2009 WL 2568468, at *10.

There is no question that Mr. Gage is an experienced Program attorney. As the substantiation offered in support of Petitioner's fee request establishes, Mr. Gage has worked in the Vaccine Program for the last 25 years and represents petitioners in numerous cases (including a number of cases that are currently pending before the Court) at all stages. Pet'r's Mem. in Resp. to Resp't's Opp. to Forum Rates (ECF No. 74) at 2-3. In my experience in the Program he has proven a capable attorney. He is entitled to a fair rate based on his experience. But the requested $415.00 per hour rate is well outside the range for an experienced attorney practicing in the same locale, and inconsistent with controlling precedent to which I am bound.

Based upon the foregoing, I find that Mr. Gage is not entitled to the higher rate requested in his revised fees request. Nevertheless, his experience with the Program, and skill in representing petitioners, warrant some upward revision from his originally-requested rates. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 6292218, at *10-11 (Fed. Cl. Nov. 22, 2011) (proper for special master to adjust hourly rate in given case even if so doing was inconsistent with other special master decisions). Accordingly, I have determined that **a rate of $300.00 per hour for work performed in 2015** is appropriate.

The 2015 rate cannot be applied retroactively to work done in previous years, as doing so would effectively be equivalent to charging the government interest. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for review den'd*, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011). As a result,

employing the CPI Calculator,[25] the reasonable hourly rate for Mr. Gage in 2015 should be adjusted for work performed in 2014, 2013, and 2012. Mr. Gage will therefore receive compensation at a rate of $299.64 per hour for work performed in 2014; $294.86 per hour for work performed in 2013; and $290.60 per hour for work performed in 2012.

Next, Respondent argues that Mr. Lujan is entitled to only a rate of $145.00 per hour rather than $200.00 per hour as requested. Second Opp. (ECF No. 73) at 3. As Respondent aptly noted, Petitioner failed to submit information regarding Mr. Lujan's background or experience necessary to establish a higher hourly rate for the time he spent on this case. Petitioner bears the burden of providing evidence to support the reasonableness of an attorney's hourly rate. *Blum*, 465 U.S. at 895 n.11. The special master evaluates such evidence, as well as his or her own judgment, when making a determination regarding a reasonable hourly rate. *See, e.g.*, *King*, 2010 WL 5470787, at *4. But I cannot do so if it is unsupplied. Because Mr. Lujan's involvement in this case began after Petitioner filed her initial fees request, no information regarding Mr. Lujan was submitted therein. The second request now includes time that Mr. Lujan spent on this case, but no information regarding his background is provided.

Accordingly, in an exercise of my discretion, I determine that the hourly rate of $145.00 per hour rate that Respondent suggested for work performed by Mr. Lujan is reasonable based upon the present showing.[26]

B.    Attorney Time

A Vaccine Act petitioner should be compensated only for attorney hours "reasonably expended" on the litigation. *Carrington v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 319, 323 (2008) (quoting *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 754 (Apr. 2, 1991)). Those "hours that are excessive, redundant, or otherwise unnecessary" must be excluded. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley*, 461 U.S. at 433-34). Similarly, tasks that could be efficiently delegated to an individual who charges a lower hourly rate than the attorney (for example, a paralegal or even a secretary) should not be billed at the attorney's hourly rate. *Brown v. Sec'y of Health & Human Servs.*, No. 09–426V, 2012 WL 952268, at *7 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (quoting *Riggins v. Sec'y of Health & Human Servs.*, No 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009)) ("[i]f counsel elects to have an attorney perform [clerical] activities, it is in counsel's discretion. However, the time

---

[25] *CPI Inflation Calculator,* U.S. Bureau of Labor Statistics, http://data.bls.gov/cgi-bin/cpicalc.pl (last accessed May 13, 2016) ("CPI Calculator").

[26] Petitioner may, however, seek the difference between the awarded rate and the requested higher rate in any final fee request in this case, and upon a more detailed showing that $200.00 per hour is a more appropriate rate given Mr. Lujan's overall expertise.

spent by an attorney performing work that a paralegal can accomplish should be billed at a paralegal's hourly rate, not an attorney's").

Attorney billing records (which should set forth specific information about the date and nature of attorney tasks performed on a given case) can be used when determining the reasonableness of the amount of time spent on litigation. *See* Guidelines for Practice Under the National Vaccine Injury Compensation Program (Office of Special Masters, United States Court of Federal Claims, Rev. Ed. Nov. 2014) Section XIV.A.3 at 19. Significantly, it is within the special master's discretion to reduce the number of hours by a percentage of the amount charged, rather than making a line-by-line determination regarding the reasonableness of the charges. *Saxton*, 3 F.3d at 1521-22 (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only 58 percent of the number of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Respondent has raised specific objections to the reasonableness of hours expended by all of Petitioner's individual attorneys, plus the paralegals involved with this case, identifying various entries as vague, excessive, or duplicative. First Opp. (ECF No. 67) at 7-8; Second Opp. (ECF No. 73) at 3. Accordingly (and despite the fact that precedent does not obligate me to do so), I have reviewed the attorneys' and paralegals' billing records to look for examples of inefficient work, while also looking at the specific instances of inefficiency pointed out by Respondent.

Based upon my review, I have not identified instances of inefficiency that might warrant a reduction. Unquestionably, the procedural history reflects dilatory conduct (and even the ignoring of my orders) in completing the filing of medical records and filing an expert report in this case. *See, e.g.*, ECF Nos. 13, 15, 19, 42, and 45. But some delays were justified. Thus, the filing of the statement of completion was delayed by over 5 months,[27] but I discount such delay by the fact that the case was received a month or so before the statute of limitations would run, and given that the actual time billed for the completion of those tasks does not appear to be excessive. Moreover, even with the delays in completing such filings, this case was scheduled

---

[27] The statement of completion was originally to be filed on November 26, 2012 (ECF No. 5), but it was not actually filed until May 13, 2013 (ECF No. 23). And even after the filing of the statement of completion, missing records were identified by Respondent (ECF No. 26), which Petitioner did not file until June 24, 2013 (ECF No. 28).

for hearing within four years of filing. Accordingly, counsel's dilatory conduct in this case is not grounds herein for a reduction.

I also do not find merit in Respondent's objection that certain tasks performed were duplicative. For example, Respondent specifically objects to 4.5 hours spent by Mr. Lujan to review the expert report and prepare an outline as duplicative of time already spent by Mr. Gage and the paralegals handling this case. Second Opp. (ECF No. 73) at 3. But staffing a case with additional attorneys can also ensure that the overall quality of work performed is better, since each can backstop the other, reducing the odds of lawyerly error. *See, e.g.*, *Barrett*, 2014 WL 2505689, at *8 (multiple attorneys working the same case can "efficiently and productively" work together, "applying their skills and performing their duties in a complementary, non-duplicative manner"). In evaluating if multiple attorneys have unnecessarily duplicated effort or worked in a coordinated manner, the important question is "whether having [multiple] attorneys is *unreasonable*." *Davis v. Sec'y of Health & Human Servs*., No. 07-451V, 2012 WL 4748079, at *2 (Fed. Cl. Spec. Mstr. Sept. 6, 2012) (emphasis added). Here, I do not find that the time devoted to the matter by Mr. Lujan was unreasonable.

Given the above, I do not reduce any of the hours requested for the time of the attorneys representing Ms. Auch in this case.

## III.   Paralegal Rates and Time

A similar analytic approach is applied in determining the hourly rate for paralegal services. *See, e.g.*, *Dimatteo v. Sec'y of Health & Human Servs*., No. 10–556V, 2014 WL 1509320, at *6 (Fed. Cl. Spec. Mstr. Mar. 27, 2014). Respondent specifically questions the reasonableness of the rate of $135.00 per hour that Petitioner seeks for all paralegal work done since the beginning of the case, as requested in the Second Fee Application (ECF No. 72). Second Opp. (ECF No. 73) at 2. Petitioner had previously sought reimbursement for paralegal time at rates ranging from $108.00 to $112.00 per hour (apparently based on a local rate), but now seeks a rate of $135.00 per hour for all paralegal time spent on this case (apparently based on the forum rate for paralegal services set in *McCulloch*).

Reasonable paralegal fees are calculated using the lodestar method. *See Dunham v. Sec'y of Dep't of Health & Human Servs.*, 18 Cl. Ct. 633 (Nov. 22, 1989). To calculate reasonable paralegal fees, the number of hours reasonably expended by the paralegal on the litigation is multiplied by a reasonable hourly rate. *Id.* at 641. The petitioner bears the burden of demonstrating the reasonableness of the paralegal's hourly rate and the reasonableness of the number of hours expended on litigation. *Id.*

I am sympathetic to Petitioner's desire (consistent with her request to pay Mr. Gage an in-forum rate) to leverage *McCulloch* to obtain higher paralegal hourly rates. However, the requested $135.00 per hour rate is well outside the range for a paralegal practicing in Cheyenne. Certainly other well-reasoned decisions have found this to be the case. *See, e.g.*, *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *3 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (rate of $100.00 per hour reasonable for paralegals working in Cheyenne, Wyoming); *Lawrence v. Sec'y of Health & Human Servs.*, No. 09-0435V, 2013 WL 3146775, at *4 (Fed. Cl. Spec. Mstr. May 28, 2013) (same).

Accordingly, I find a rate of $112.00 per hour to be appropriate for all paralegal work performed in 2015. As noted above, employing the CPI Calculator, I find that the reasonable hourly rate for paralegal work performed in 2015 should adjusted downward for work performed in 2014, 2013, and 2012. Accordingly, paralegals involved in this case will receive $111.87 per hour for work performed in 2014, $110.08 per hour for work performed in 2013, and $108.49 per hour for work performed in 2012.

Respondent further objects to some of the paralegal time requested for the paralegals involved in this case as overly vague, excessive, duplicative, or secretarial in nature. First Opp. (ECF No. 67) at 7. These objections, and my reaction, are as follows:

- First, Respondent specifically objects to an unspecified portion of the two hours that Susan McNair billed on April 2, 2014, which was devoted to printing records and placing them in a binder because by Respondent's estimation the task is secretarial in nature. *Id.* at 8. I reject these objections, since it is reasonable for a legal assistant or paralegal to help prepare case materials in this fashion, and the time in question is not excessive.

- Second, Respondent objects to 0.1 hours billed by Brian Vance on June 26, 2014, September 11, 2014, and October 2, 2014, for time conferring with Mr. Gage, because "[t]hese entries are too vague to permit a review of whether they are reasonable," as well as 1.7 hours that Brian Vance billed on July 17, 2014, for organizing the client folder because this entry is similarly vague and seems secretarial in nature. *Id.* at 8. I will not reduce the former time, as it is a *de minimis* amount, but I will reduce by 0.5 hours the time billed on July 17th as more appropriately deemed administrative. *Guerrero v. Sec'y of Health & Human Servs.*, 124 Fed. Cl. 153, 156 (2015) (finding that the Special Master did not abuse his discretion in reducing hours where the Special Master based his determination on that fact that "activities that are 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[]'

[as] [a]ttorneys may not separately charge for clerical or secretarial work because
those charges are overhead for which the hourly rate accounts.").

- Thirdly, Respondent objects to some of the time billed by Helen Nelson,
  including 0.5 hours billed on October 25, 2012, because no other information is
  submitted except the time and date; 5.5 hours billed on December 14, 2012, to
  review medical records, bates stamp, print, and put documents in a binder because
  Respondent believes some of these tasks are secretarial in nature, and others are
  excessive; 0.4 hours billed for meeting with other paralegals about this case on
  June 24, 2013, and 0.4 hours billed on October 1, 2013 to organize the hard file as
  overly vague and excessive; as well as 1.5 hours billed on January 30, 2014, to
  copy records for a binder to be sent to the expert as secretarial in nature. *Id.* at 8.
  The total amount objected to is 8.3 hours.

  Respondent's objection to time entries containing no descriptions is valid, so I
  will not allow recovery of the 0.5 hours from October 25th. I will permit recovery
  of all other time except for the 1.5 hours of copying on January 30th, which I will
  reduce by one hour.

- Fourth, Respondent objects to some of the time billed by Kara Sutton, including 1
  hour billed on April 2, 2013, April 4, 2013, April 11, 2013, April 16, 2013, and
  April 17, 2013, to organize or scan medical records because "[t]his task is partly
  secretarial in nature," and 0.5 hours billed on May 12, 2013, and 0.2 hours billed
  on October 1, 2013 to review the file as overly vague. *Id.* The four hours of time
  billed to organization and scanning of records is acceptable, but I will reduce by
  0.3 hours the 0.7 hours devoted to file review.

- Finally, Respondent objects to 0.2 hours billed by Fred Hulbert on April 16, 2014,
  to print a FedEx receipt, indicating that this entry is secretarial and also excessive.
  *Id.* I accept this objection, and will therefore disallow this time request.

## IV.    Challenges to Requested Expert Costs and Litigation Costs.

Just as they are required to establish the reasonableness of requested fees, petitioners
must also demonstrate that requested litigation costs are reasonable. *Perreira*, 27 Fed. Cl. at 34;
*Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry their
burden, such as by not providing appropriate documentation to substantiate a requested cost,
special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of
Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30,
2005).

Vaccine Program petitioners have received interim awards for incurred expert costs. Such awards are most commonly granted to reimburse such costs *following* the expert's testimony at an entitlement hearing. *See, e.g.*, *Roberts*, 2013 WL 2284989 (granting interim award of expert costs after conclusion of hearing but before issuance of entitlement decision); *Dobrydnev v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 134, 148 (2010) (error for special master to deny interim fees request to cover incurred expert costs; expert had testified at hearing and needed to be compensated for prior work before he would be willing to testify at subsequent rebuttal proceeding); *see also Crutchfield*, 2011 WL 3806351, at *8 (granting interim award of expert costs after experts' testimony at an evidentiary hearing; although petitioner had paid cost of expert's report preparation, it was an undue hardship to require petitioner also to cover costs incurred after expert testified at trial). However, there are also instances in which petitioners have obtained an interim award of expert costs before the expert testified. *See, e.g.*, *DiMatteo*, 2014 WL 1509320, at 8-9.

Ms. Auch asks for an interim award of expert costs incurred and paid prior to hearing (which has been scheduled to take place a few months from now, in August 2016). As discussed above, one of the *Avera* criteria for an award of interim fees is whether a matter requires the services of "costly experts." *Avera*, 515 F.3d at 1352. That question is best resolved by addressing the cost issue from an objective standpoint. *Fester*, 2013 WL 5367670, at *15.

Respondent's only objection to the expert costs requested herein is to Dr. Steinman's rate of $500.00 per hour, the reasonableness of which she argues should be determined after he testifies at hearing. First Opp. at 9. However, I find there are other grounds for hesitation in awarding such expert-related costs on an interim basis. Petitioner's motion does not adequately substantiate why an interim award of expert costs is appropriate or necessary. In addition, although I gave weight to the fact that Ms. Auch's counsel was bearing expert costs of approximately $8,000.00 as a factor in determining that *some* interim award was appropriate to counsel, I do not find that the sum itself is objectively high. *See, e.g.*, *Faoro v. Sec'y of Health & Human Servs.*, No. 10-704V, 2014 WL 5654330 (Fed. Cl. Spec. Mstr. Oct. 15, 2014) (interim award of $23,130.00 in expert costs). Petitioner has also not established that her ability to prosecute this case will be otherwise harmed if reimbursement of such costs is denied pre-hearing (for example, by demonstrating that the expert would not be willing to testify at hearing unless she was reimbursed for the payment of such costs).

Certainly there is some burden imposed on counsel in having to carry the expert costs incurred (and paid) for services of Drs. Steinman and Neumayr to date. But the existing motion does not substantiate what the nature of that burden is, and/or why it merits an interim award. And I concur with the special master's observation in *Fester* that delving further into the particular financial status or needs of present counsel within his law firm, in order to ascertain

whether that burden is substantial enough, requires a subjective and speculative inquiry that goes well beyond what is appropriately the scope of an interim fees request. *Fester*, 2013 WL 5367670, at *15. (I also note that the concurrent interim award of attorney's fees I am granting could be used in part to ameliorate such costs, thereby, if indirectly, easing any burden on counsel).

Given the above, I do not find that an interim award of expert costs is appropriate at this time. Immediately after the hearing, however (at which time Petitioner's expert will have carried out their ultimate purpose by testifying), Petitioner may renew the present request, supplementing it with statements or invoices recording additional expert costs whether paid or merely incurred. I defer resolution of this aspect of Petitioner's motion until then.

Respondent has not objected to the $1,225.73 in other costs that Petitioner requested (which include the petition filing fee, copying costs, and miscellaneous costs associated with mailing items). I have reviewed these costs and determined that they are reasonable. Accordingly, I award Petitioner these amounts in full.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Gage's Fees | $ 34,030.00 | $ 9,559.79 | $ 24,470.21 |
| Mr. Lujan's Fees | $ 1,500.00 | $ 412.50 | $ 1,087.50 |
| Mr. Karz-Wagman's Fees | $ 8,127.00 | None | $ 8,127.00 |
| Expert Costs | $ 8,550.00 | $ 8,550.00 | $ 0.00 |
| Paralegal Costs | $ 13,793.00 | $ 2,620.52 | $ 11,172.48 |
| Other Costs | $ 1,225.73 | None | $ 1,225.73[28] |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Interim Attorney's Fees, awarding **$46,082.92** in interim fees and costs. I **DEFER** consideration of expert costs until a later time. In the absence of a motion for review filed pursuant to RCFC

---

[28] As noted above, Respondent has not objected to these costs, and because I find them reasonable I hereby include them in the award without adjustment.

Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[29]

      **IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[29] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.